## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CGB DIVERSIFIED SERVICES, INC.,**

      **Plaintiff,**

      **v.**

      **Case No. 20-2120-JAR-TJJ**

**ROBIN FORSYTHE,**

      **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff CBG Diversifies Services, Inc. ("Diversified") bring this lawsuit against its former employee, Defendant Robin Forsythe, asserting claims for breach of contract (Count I), misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and the Kansas Uniform Trade Secrets Act ("KUTSA") (Counts II and III), tortious interference with contracts (Count IV), and tortious interference with prospective business advantages or relationships (Count V) after Forsythe was terminated and went to work for a competitor.[1]  On March 20, 2020, the Court granted in part Diversified's motion for a limited temporary restraining order prohibiting Defendant from communicating with his former clients directly or indirectly regarding their crop insurance policies.[2]

This matter is now before the Court on Defendant's Motion to Dismiss Counts II and III pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 15).  For the reasons explained in detail below, Defendant's motion is denied.

---

[1] This lawsuit was filed on the heels of an identical case filed by Plaintiff against Defendant in the United States District Court for the Northern District of Mississippi, *CGB Diversified Servs., Inc. v. Forsythe*, No. 20-cv-00066-NBB-RP.  The Court takes judicial notice that the parties filed a Stipulation of Dismissal in that case on April 3, 2020. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (holding court may take judicial notice of facts that are a matter of public record and of state court documents).

[2] Doc. 20.

**I.      Factual and Procedural Background**

The following facts are taken from the well-pleaded allegations of the Verified Complaint and are accepted as true and viewed in the light most favorable to Diversified.[3]

Diversified is a managing general agent and underwriter of crop insurance.  It contracts with sales agents to sell crop insurance policies to farmers, who may place policies directly through Diversified, via its team of sales agents or through an independent agent or agency.  In the course of its business, Diversified stores and secures confidential information and trade secrets in a variety of way depending on their nature and scope.  Some materials are stored in electronic databases, or on computers and other devices, with restricted access based on an employee's or management's need to access information.  Even within these databases, employees and management may have only limited access to certain fields or portions of data. Since the crop insurance industry is regulated by the government, additional safeguards like confidentiality, non-compete, and non-solicitation agreements are also utilized.

Diversified relies on trade secrets, other confidential information, and proprietary methods and processes in developing and marketing its crop insurance.  It has spent years cultivating relationships and working with customers to identify and implement strong protections based on each farmer's needs.  It has also invested substantial resources developing business models, analytic risk analyses, and other indices to estimate indemnities, profit, loss, and other critical and proprietary information regarding its crop insurance business. Diversified's relationships, confidential information, and trade secrets give it an advantage over its competitors.

---

[3]*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009)).

Forsythe began working for Diversified in 2009 as a commissioned crop insurance agent,

selling insurance products to farmers.  Forsythe's employment responsibilities included the sale

and servicing of multi-peril crop insurance contracts under the federal crop insurance program;

the maintenance and development of customer, agent and other business relationships; and the

marketing, promotion, and recommendation of Diversified insurance products based upon the

specific needs of Diversified's customers.  Consequently, as part of his employment, Forsythe

was given access to Diversified's customer information, strategy, and customer profiles,

including, but not limited to: Diversified's private-risk management products and systems,

information about crop insurance and Diversified's customers, sensitive strategic information

about detailed marketing plans, insurance product development, risk analysis, and customer and

agent development and retention, along with numerous proprietary matrices relating to

indemnities and pricing.  Forsythe was provided this information, as part of his employment, to

service and develop Diversified's customer portfolio, or "book" of business throughout the Mid-

South.  Much of this information is closely held by Diversified and is restricted.  Diversified

protects this information because it is the product of years of data analysis and customer

management, and includes internal financial and risk information.

But for his employment at Diversified, Forsythe would not have had access to this

information.  Accordingly, as a condition of his employment, Diversified and Forsythe entered

into a confidentiality, non-compete and non-solicitation agreement on November 19, 2018.[4]  The

agreement provides that Forsythe's continued employment is conditioned upon his consent to

and compliance with its terms, and defines "confidential information" as:

> Any information regarding the Company Group that has not been
> made available to the public by an authorized representative of the

---

[4]Doc. 1-1, Ex. A.

Company Group, and that is used by the Company Group in their business, whether used or made accessible verbally or in hard or soft copy or other format. Confidential Information includes, but is not limited to the following types of information: the Crop Insurance Advantage (CIA) system, the AgProfit Orable, (which includes the DS Profit Matrix, DS Super Matrix, DS Strategizer, DS OU/EU Optimizer, DS Hail Quoter and the PRF Quoter), the DS Quote system, policy worksheets, sales territory information, onboarding and renewal materials, information provided to the Company Group by their clients, suppliers, contractors, subcontractors, business partners, agents or representatives (regardless of whether the Company Group is contractually obligated to keep such information confidential); pricing, costs; marketing or other business strategies and plans, business plans, financial information, profit margins, drawings, employees, methods of operation, techniques, processes, structure, sales, training, computer software (including, without limitation, source code, object code and manuals), plans, current or future bids or proposals or contracts, current and future development and expansion or contraction plans, staffing, supplier and vendor information, referral sources, business partners, and customer, insured or client information such as names, contact persons, past and current needs and requirements and history, billing or order information, contract renewal dates, and any other information relating to the Company Group's business that is treated by the Company Group as confidential.[5]

The  agreement prohibits the disclosure of Diversified's confidential information as

follows:

Employee acknowledges that all Confidential Information is confidential, proprietary, not known outside of the Company Group's [Diversified together with its related companies] business, valuable, special and/or unique asset of the Company Group which belongs to the Company Group and gives the Company Group a competitive advantage. Employee further acknowledges that if this Confidential Information were disclosed to third parties or used by third parties and/or Employee in an unauthorized manner, such disclosure or use would seriously and irreparably damage the Company Group and cause the loss of certain competitive advantages. Employee agrees that he/she will not, directly or indirectly (other than solely in furtherance of the Company Group's business and interests as directed by the Company Group), use, disclose, share, publish, or make accessible to any person or entity any Confidential Information that

---

[5]*Id.* ¶ 2.1.

4

Employee may obtain or to which Employee may have access. Employee further agrees not to use Confidential Information for Employee's own private or commercial use or for the private or commercial use of any other person or entity, or any other use in any way detrimental to the Company Group. Employee shall take all reasonable steps to safeguard disclosure, misuse, loss, or theft. All originals, copies, and excerpts of any Confidential Information in Employee's possession shall be returned to the Company upon Employee's separation or earlier upon the Company's request. Employee acknowledges that that this promise of non-disclosure and non-use of Confidential Information survives the end of Employee's employment with the Company.[6]

On December 23, 2019, Diversified terminated Forsythe's employment for cause; he admitted to forging insureds' signatures on fifty-eight acreage reports.  Since his termination, Diversified alleges Forsythe has engaged in unlawful misconduct through use and disclosure of Diversified's trade secrets and confidential and proprietary information; engaged in actions directly against the business interests of, and in competition with, Diversified; and engaged in actions that interfere with Diversified's contracts and business relationships, all in violation of Forsythe's confidentiality, non-compete, and non-solicitation agreement and federal and state law.

Forsythe went to work for Progeny Ag, selling seeds to farmers and calls on many of his former customers in his new job.  Diversified alleges that Forsythe violated the non-compete, non-solicitation and non-interference provisions of the Agreement by contacting Diversified's insureds in order to help them cancel their insurance policies, instead providing services related to crop insurance "directly or indirectly with Farmers First Crop Protection LLC, SEMO Crop Insurance LLC, or other agents/agencies" that compete with Diversified.

Diversified relies on a February 11, 2020 email from Forsythe to a Diversified customer, requesting the insured sign a Crop Insurance Application/Cancellation-Transfer in order to

---

[6]*Id.* ¶ 3.

cancel the insured's policy with Diversified. In the email, Forsythe characterizes this as a name change, but the insured responded with some confusion about his email and the names used. Forsythe used the name Taylor Moore, and the email address of farmers1stcropprotection@gmail.com. Moore is Forsythe's soon-to-be son-in-law, who recently formed Farmers First Crop Protection LLC. Moore is a crop insurance agent licensed by the Risk Management Agency of the U.S. Department of Agriculture ("RMA"). The application attached to the email was prepared by Amanda J. Brooks with SEMO Crop Insurance LLC, located in Advance, Missouri. Brooks is a crop insurance agent licensed by RMA.

Diversified believes Forsythe has been in contact with all of Diversified's customers for whom he was the crop insurance agent during his employment with Diversified. Forsythe has taken actions and continues to act in direct competition with Diversified. Forsythe poses a particular competitive threat to Diversified, not merely because he knows Diversified's trade secrets, but because he developed relationships with significant Diversified customers or potential customers on the strength of Diversified's goodwill, products and services in his role as an agent. Diversified alleges Forsythe has already shown he intends to solicit Diversified's customers—whose identities, needs, and strategic approach he learned and cultivated while at Diversified—and to compete with Diversified using information that he improperly took from Diversified.

The closing date for crop insurance cancellation applications is February 28; if a policy is not cancelled it is automatically renewed. Because Diversified received several cancellation applications around that deadline this year, it believes that Forsythe was responsible for driving business away from Diversified, business that would be difficult to retrieve after the February 28, 2020 deadline.

## II.      Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must

contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

level" and must include "enough facts to state a claim for relief that is plausible on its face."[7]  In

order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[8]  The

plausibility standard does not require a showing of probability that a defendant has acted

unlawfully, but requires more than "a sheer possibility."[9]  "[M]ere 'labels and conclusions,' and

'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer

specific factual allegations to support each claim."[10]  Finally, the Court must accept the

nonmoving party's factual allegations as true and may not dismiss on the ground that it appears

unlikely the allegations can be proven.[11]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of

a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[12]  Thus,

the court must first determine if the allegations are factual and entitled to an assumption of truth,

or merely legal conclusions that are not entitled to an assumption of truth.[13]  Second, the court

must determine whether the factual allegations, when assumed true, "plausibly give rise to an

---

[7]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[8]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[11]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[12]*Id.* (quoting *Twombly*, 550 U.S. at 555).

[13]*Id.* at 679.

entitlement to relief."[14]  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."[15]

### III.     Discussion

In Counts II and III, Diversified asserts claims for misappropriation of trade secrets under

the DTSA and its state-law counterpart, the KUTSA, which mirrors the DTSA.[16]  Forsythe

moves to dismiss these counts on the grounds the Complaint fails to plausibly allege the

existence of any trade secret on which Diversified could state a viable claim.  Forsythe argues

that Diversified fails to adequately describe or identify trade secrets and that Diversified's

damages allegations fail to sufficiently allege that its trade secrets "derive independent economic

value" by remaining confidential.  The Court disagrees.

Trade secrets under the DTSA are "all forms and types of financial, business, scientific,

technical, economic, or engineering information" if the owner takes "reasonable measures to

keep such information secret" and "the information derives independent economic value . . .

from [that information] not being generally known to, and not being readily ascertainable

through proper means by, another person."[17]  Misappropriation occurs when a non-owner

acquires the trade secret "who knows or has reason to know that the trade secret was acquired by

improper means," or when a non-owner discloses or uses a trade secret "without express or

implied consent."[18]  A party alleging misappropriation of a trade secret must "come forward with

---

[14]*Id.*

[15]*Id.* at 678.

[16]K.S.A. § 60-3320.

[17]18 U.S.C. § 1839(3)(A)–(B).

[18]18 U.S.C. § 1839(5)(A) & (B)(i)–(ii).

some showing that the information alleged to be a trade secret meets the definition."[19]  Whether a trade secret exists is a question for the trier of fact.[20]  "A party need not allege a trade secret in detail, but must plead sufficiently to separate the trade secret from the general skill and knowledge of others."[21]  The ultimate sufficiency of a party's factual showing of a trade secret is not properly addressed on a motion to dismiss.[22]

Diversified has properly alleged the existence of a trade secret misappropriated by Forsythe.  First, the Complaint alleges that Forsythe used or provided to a third party Diversified's confidential customer list and customer information, including the name, address, telephone number, and social security number/employer identification number for Diversified's insureds and all persons/entities owning a substantial beneficial interest in the subject farms; crops grown; types and levels of crop insurance coverage; and Diversified's crop insurance policy numbers.[23]  This confidential information is compiled and maintained by Diversified for all of its customers and it alleges that, after his termination, Forsythe prepared a Crop Insurance Application/Cancellation Transfer for all of Diversified's insureds for whom he was the agent by utilizing Diversified's confidential customer list and information compiled and maintained by Diversified.

---

[19]*Servi-Tech, Inc. v. Burmeister*, No. 16-1130-EFM-GLR, 2016 WL 5944502, at *5 (D. Kan. Oct. 13, 2016).

[20]*Dodson Int'l. Parts, Inc. v. Altendorf*, 347 F. Supp. 2d 997, 1010 (D. Kan. 2004).

[21]*Id.*

[22]*Nuterra Capital Advisors, LLC v. Leiker*, No. 17-2501-DDC-JPO, 2018 WL 1316940, at *5 (D. Kan. Mar. 14, 2018).  *But see CGB Diversified Servs., Inc. v. Adams*, No. 20-2061-HLT-JPO, 2020 WL 1847733, at *3–4 (D. Kan. Apr. 13, 2020) (in similar case brought by Diversified against former agent, court dismissed DTSA claim at Rule 12(b)(6) stage, as complaint merely alleged "upon information and belief" that defendant misappropriated trade secrets).

[23]Docs. 1 ¶¶ 33–44; 1-4.

Clearly, "customer lists and other information about customers can constitute trade secrets under the act."[24]  Diversified acknowledges that both federal and state law require it to establish that these lists qualify as "trade secrets" under the definition of the terms adopted by the acts.  "Whether a customer list is a trade secret is a fact-intensive inquiry which is highly dependent upon the contents of the list."[25]  At the motion to dismiss stage of this litigation, however, Diversified has alleged sufficient facts to support a claim that Forsythe misappropriated its confidential customer list and customer information, which constitute "trade secrets," and the sufficiency of these facts should be addressed at a later stage.[26]

Second, Diversified has sufficiently alleged that its trade secrets "derive independent economic value" by remaining confidential.  Diversified has expressly pleaded that the secrecy of its confidential and proprietary information and trade secrets provides it with a competitive advantage.[27]  Diversified has also adequately pleaded that this information was not readily ascertainable by others and that it took efforts to maintain its secrecy.  Moreover, Forsythe agreed in his confidentiality and non-compete agreement that such information provided Diversified with a competitive advantage.[28]  These allegations with respect to the information owned and its value are enough to survive a motion to dismiss.[29]

---

[24]*US Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1195 (D. Kan. 2009) (citing *Altendorf*, 347 F. Supp. 2d at 1010).

[25]*Biocore, Inc. v. Khosrowshahi*, 96 F. Supp. 2d 1221, 1235 (D. Kan. 2000) (citation omitted), *rev'd on other grounds*, 80 F. App'x 619 (10th Cir. 2003).

[26]*See, e.g., Freebird Commc'ns, Inc. Profit Sharing Plan v. Roberts*, No. 18-2026-HLT, 2019 WL 5964583, at *4 (D. Kan. Nov. 13, 2019) (analyzing on summary judgment misappropriation of trade secrets claim with respect to customer contact information, calendars, and methods of operation for particular customers); *MomsWin, LLC v. Lutes*, No. 02-2105-KHV, 2003 WL 21554944, at *6 (D. Kan. July 8, 2003) (recognizing, on motion for summary judgment, that the existence of a trade secret "is generally a question of fact for determination by the trier of fact.").

[27]Doc. 1 ¶19.

[28]*Id.* ¶ 29; Doc. 1-1 ¶ 3.

[29]*See ATS Group, LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1200 (W.D. Okla. 2019) (granting motion to dismiss because plaintiff's allegations regarding value "merely recite the statutory definition of trade secrets," and that plaintiff did not, "for example, allege that the secrecy of the information

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Robin Forsythe's

Motion to Dismiss Counts II and III (Doc. 15) is **DENIED**.

      **IT IS SO ORDERED.**

Dated: <u>May 13, 2020</u>

                              S/ Julie A. Robinson
                             JULIE A. ROBINSON
                             CHIEF UNITED STATES DISTRICT JUDGE

---

provided it with a competitive advantage.") (citing *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010)).